UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Gary E. Huenerberg and
Jody M. Huenerberg,

        Debtors.

Case No. 17-28645-gmh
Chapter 13

**DECISION SUSTAINING THE DEBTORS' OBJECTION TO CLAIM NUMBER 1 OF THE INTERNAL REVENUE SERVICE**

The Internal Revenue Service (IRS) filed a proof of claim and supporting information in this chapter 13 case asserting that a portion of its claim is entitled to priority under 11 U.S.C. §507(a)(8) because it is for an "excise tax".[1] The debtors object that this portion of the IRS's claim is for a "shared responsibility payment" imposed for failure to comply with a provision of the Patient Protection and Affordable Care Act (ACA), "commonly referred to as the individual mandate", that "requires most Americans to maintain 'minimum essential' health insurance coverage." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 539 (2012) (discussing 26 U.S.C. §5000A). According to the debtors, the shared responsibility payment is a penalty, not a tax, so that portion of the IRS's claim is not entitled to priority under §507(a)(8).

---

[1] "An *excise* is a tax imposed on the manufacture, marketing, sale, or consumption of certain commodities, such as cigarettes, liquor, and vehicles, or on the conduct of certain trades or occupations. Although *excise* alone denotes such a tax, it is common to encounter *excise tax*—which is at best fully acceptable and at worst a venial REDUNDANCY." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 879 (3d ed. 2011). For this reason, this decision at times uses "excise" as a noun.

The IRS responds that the Supreme Court's determination in *National Federation of Independent Business v. Sebelius* that "the shared responsibility payment may for constitutional purposes be considered a tax, not a penalty", see *id.* at 563–74, means that the shared responsibility payment is a tax for purposes of §507(a)(8) and, thus, that the portion of its claim at issue is entitled to priority.

I

The IRS and the debtors do not dispute the material facts. Resolution of the debtors' objection to the IRS's claim depends on the construction of and interaction between two sections of the United States Code.

The first section at issue is 26 U.S.C. §5000A. Section 5000A(a) contains the ACA's individual mandate and provides that, "for each month beginning after 2013", all "applicable individual[s]" must have "minimum essential coverage"—which is to say, health insurance coverage as defined in §5000A(f). "If a taxpayer who is an applicable individual" fails to comply with the individual mandate "for 1 or more months, then," subject to certain exemptions not relevant here, §5000A(b) "impose[s] on the taxpayer a penalty", referred to as a "[s]hared responsibility payment". §5000A(b)(1); see also §5000A(e) (describing those individuals "with respect to" whom "[n]o penalty shall be imposed"). The amount of the shared responsibility payment "is determined by such familiar factors as taxable income, number of dependents, and joint filing status." *Nat'l Fed'n*, 567 U.S. at 563 (citing §5000A(b)(3), (c)(2) & (c)(4)).[2] "Any penalty imposed by this section with respect to any month shall be included with a taxpayer's return . . . for the taxable year which includes such month." §5000A(b)(2). Then, "the IRS must . . . assess and collect it in the same manner as taxes." *Nat'l Fed'n*, 567 U.S. at 564 (citation and internal quotation marks omitted).

---

[2] Congress recently eliminated the shared responsibility payment for "months beginning after December 31, 2018." See Act of Dec. 22, 2017, Pub. L. No. 115-97, §11081, 131 Stat. 2092.

The second section at issue is 11 U.S.C. §507, which sets out the Bankruptcy Code's priority scheme for certain expenses and claims. Section 507(a)(8) affords priority status to "allowed unsecured claims of governmental units" but "only to the extent that such claims are for" taxes, customs duties, or penalties of a kind specified in that paragraph. One kind of tax so specified is "an excise tax on . . . a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition". §507(a)(8)(E)(i). In general, a chapter 13 plan must "provide for the full payment . . . of all claims entitled to priority under [§]507". 11 U.S.C. §1322(a)(2).

The IRS argues that, for purposes of §507(a)(8)(E), the shared responsibility payment is an excise on a transaction ("an individual's act or choice not to obtain health insurance coverage") that occurred before the debtors filed their petition in this case and for which the debtors were required to file a tax return within three years before the date on which they filed their petition. CM-ECF Doc. No. 36, at 11; CM-ECF Doc. No. 41, at 4. The debtors reply that the shared responsibility payment is not a tax, much less an excise. They characterize the shared responsibility payment as "a penalty for failure to obtain health insurance". CM-ECF Doc. No. 31, at 1. If that characterization is correct, the portion of the IRS's claim attributable to the debtors' outstanding obligation under §5000A is not entitled to priority. See *In re Parrish*, 583 B.R. 873 (Bankr. E.D.N.C. 2018); *In re Chesteen*, No. 17-11472, 2018 WL 878847 (Bankr. E.D. La. Feb. 9, 2018).

II

A

1

When considering "whether [an] exaction is an 'excise tax' for purposes of" 11 U.S.C. §507(a)(8)(E), a court must first "answer the question whether the exaction is a tax to begin with." *United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213,

215 & n.1, 224 (1996) (analyzing 11 U.S.C. §507(a)(7)(E), which Congress renumbered as §507(a)(8)(E) in section 304(c) of the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4132). To determine whether an exaction is a tax, one ignores the label given to the exaction by Congress and instead looks to how the exaction operates:

> On a number of occasions, [the Supreme] Court considered whether a particular exaction, whether or not called a "tax" in the statute creating it, was a tax for purposes of [§64(a) of the Bankruptcy Act of 1898, that statute's priority provision], and in every one of those cases the Court looked behind the label placed on the exaction and rested its answer directly on the operation of the provision using the term in question.

*Id.* at 220. As the Supreme Court stated, "the 1978 Act reveals no congressional intent to reject generally the interpretive principle that characterizations in the Internal Revenue Code are not dispositive in the bankruptcy context, and no specific provision that would relieve us from making a functional examination of" the specific exaction at issue to determine whether it is a tax. *Id.* at 224.

The Supreme Court has ruled that, for purposes of priority in bankruptcy, an exaction operates as a tax when it lays "a pecuniary burden . . . upon individuals or property for the purpose of supporting the Government", *New Jersey v. Anderson*, 203 U.S. 483, 492 (1906); when it "is an enforced contribution to provide for the support of government", *Reorganized CF&I Fabricators*, 518 U.S. at 224 (quoting *United States v. La Franca*, 282 U.S. 568, 572 (1931)); or when it lays a "pecuniary burden[] . . . upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it", *City of New York v. Feiring*, 313 U.S. 283, 285 (1941). By contrast, an exaction is a penalty if it operates as "punishment for an unlawful act or omission". *Reorganized CF&I Fabricators*, 518 U.S. at 224 (citing *La Franca*, 282 U.S. at 572).

## 2

### a

The IRS contends that the Supreme Court in *National Federation* engaged in the same functional analysis in holding that the ACA's shared responsibility payment falls within Congress's constitutional taxing power that it would have applied had it instead analyzed whether the shared responsibility payment is a tax for purposes of §507(a)(8). See CM-ECF Doc. No. 36, at 1–5. For example, the Court concluded:

> The requirement to [make shared responsibility payments,] . . . found in the Internal Revenue Code and enforced by the IRS[,] . . . yields the essential feature of any tax: It produces at least some revenue for the Government. Indeed, the payment is expected to raise about $4 billion per year by 2017.

*Nat'l Fed'n*, 567 U.S. at 563–64 (citations omitted). Thus, in the language of the Court's bankruptcy-priority cases, §5000A imposes an involuntary pecuniary burden on individuals to defray the expenses of government.

The Court in *National Federation* also "focused on three practical characteristics" of the shared responsibility payment, each of which weighs against concluding that the payment operates to punish unlawful conduct—the Court's penalty touchstone. *Id.* at 565. The Court observed that (1) §5000A imposes a relatively light burden on those who must pay; (2) "the individual mandate contains no scienter requirement"; and (3) "the payment is collected solely by the IRS through the normal means of taxation—except that the Service is *not* allowed to use those means most suggestive of a punitive sanction, such as criminal prosecution." *Id.* at 566.

The Court contrasted the shared responsibility payment with "the so-called tax on employing child laborers" that the Court in *Bailey v. Drexel Furniture Co.*, 259 U.S. 20 (1922), held "was actually a penalty" for purposes of Congress's power to lay and collect taxes under the Constitution. *Nat'l Fed'n*, 567 U.S. at 565. The "tax" at issue in *Drexel Furniture* "imposed an exceedingly heavy burden—10 percent of a company's net

income—on those who employed children, no matter how small their infraction." *Id.* Further, it "imposed that exaction only on those who *knowingly* employed underage laborers." *Id.* at 565–66 (emphasis added). Finally, "this 'tax' was enforced in part by the Department of Labor, an agency responsible for punishing violations of labor laws, not collecting revenue." *Id.* at 566.

Ultimately, *National Federation* emphasizes that, "[i]n distinguishing penalties from taxes, [the] Court has explained that 'if the concept of penalty means anything, it means punishment for an unlawful act or omission.'" *Id.* at 567 (quoting *Reorganized CF&I Fabricators*, 518 U.S. at 224). The Court concluded that, "[w]hile the individual mandate clearly aims to induce the purchase of health insurance, it need not be read to declare that failing to do so is unlawful." *Id.* at 567–68. The shared responsibility payment was not a penalty imposed on health-insurance scofflaws, the Court reasoned:

> Indeed, it is estimated that four million people each year will choose to pay the IRS rather than buy insurance. We would expect Congress to be troubled by that prospect if such conduct were unlawful. That Congress apparently regards such extensive failure to comply with the mandate as tolerable suggests that Congress did not think it was creating four million outlaws. It suggests instead that the shared responsibility payment merely imposes a tax citizens may lawfully choose to pay in lieu of buying health insurance.

*Id.* at 568 (citation omitted).

b

In arguing that the shared responsibility payment is a penalty rather than a tax for purposes of 11 U.S.C. §507(a)(8), the debtors rely on two recent bankruptcy-court decisions that so conclude. The courts in those cases, *In re Parrish*, 583 B.R. 873, and *In re Chesteen*, 2018 WL 878847, reasoned that the Court's holding in *National Federation* that the shared responsibility payment is a tax for constitutional purposes does not mean that it is necessarily a tax for purposes of §507(a)(8). See 583 B.R. at 878; 2018 WL 878847, at *1 n.2. Both *Parrish* and *Chesteen* then conclude that the shared responsibility

payment is a penalty because its "primary purpose . . . [is] to encourage people to buy insurance by penalizing those who do not". *Parrish*, 583 B.R. at 881; see also *Chesteen*, 2018 WL 878847, at *3 ("Congress's primary, or dominant, purpose of imposing the individual mandate of the ACA was not to support or fund the government fiscally, but to discourage Americans from living without health insurance coverage.").

This focus on primary purpose, however, requires expanding the definition of "penalty" provided by the Court in *Reorganized CF&I Fabricators.* That case and the decisions on which the Court in that case relied suggest an exaction dichotomy: "[a] tax is an enforced contribution to provide for the support of government; a penalty . . . is an exaction imposed by statute as punishment *for an unlawful act*.'" 518 U.S. at 224 (emphasis added) (quoting *La Franca*, 282 U.S. at 572); see also *Nat'l Fed'n*, 567 U.S. at 573 (When its "penalizing features" extend too far, a "so-called tax . . . loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment." (quoting *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 779 (1994))). Neither *Parrish* nor *Chesteen* suggest that the shared responsibility payment results in *no* support for the government. Given *National Federation*'s contrary observation, 567 U.S. at 563–64, they can't. And neither *Parrish* nor *Chesteen* contend that the shared responsibility payment is imposed for an unlawful act or omission. Again, they can't, as the Court in *National Federation* concluded that Congress lacks the power to force people to buy health insurance—that is, to make a refusal to buy it unlawful. See *id.* at 574 ("[I]mposition of a tax . . . leaves an individual with a lawful choice to do or not do a certain act, so long as he is willing to pay a tax levied on that choice."); *id.* at 555 (opinion of Roberts, C.J.) ("The Framers gave Congress the power to *regulate* commerce, not to *compel* it . . . ."); *id.* at 657 (Scalia, Kennedy, Thomas & Alito, JJ., dissenting) ("[T]he decision to forgo participation in an interstate market is not itself commercial activity . . . within Congress' power to regulate.").

Under *National Federation*, the shared responsibility payment does not fall within *Reorganized CF&I Fabricators*' "penalty" model as "punishment for an unlawful act or omission". 518 U.S. at 224. *Parrish* and *Chesteen* acknowledge this, but they reason that exactions that deter *lawful* conduct may also be construed as penalties, rather than taxes, at least for purposes of §507(a). See *Parrish*, 583 B.R. at 879 ("[A] penalty is an exaction imposed by statute as punishment for an act or omission that is discouraged."); *Chesteen*, 2018 WL 878847, at *3 (The shared responsibility payment "is a penalty designed to deter citizens from living without health insurance."). But expanding the scope of "penalty" to include conduct-deterring exactions risks turning all (or practically all) taxes into penalties. See *Nat'l Fed'n*, 567 U.S. at 567 (noting that "[e]very tax is in some measure regulatory" because "it interposes an economic impediment to the activity taxed as compared with others not taxed" (alteration in original) (quoting *Sonzinsky v. United States*, 300 U.S. 506, 513 (1937) ("[A] tax is not any the less a tax because it has a regulatory effect . . . .")))·

*Parrish* and *Chesteen* navigate this difficulty by proposing to separate taxes from penalties based on the "primary" purpose of the exaction at issue. See *Parrish*, 583 B.R. at 881 (quoting *Chesteen*, 2018 WL 878847, at *3). Assessing an exaction's "primary" purpose, though, is no easy task, especially if one ignores statutory labels, as *Reorganized CF&I Fabricators* requires. As a result, the primary-purpose method is not likely to maximize consistent outcomes in distinguishing taxes from penalties for purposes of §507(a)(8). The Supreme Court, moreover, has focused the tax-penalty inquiry under §507(a)(8) on function (that is, effect) rather than purpose, and bankruptcy courts are ill-equipped to inquire into whether a particular exaction functions more like a tax (i.e., raises revenue) or more like a penalty (i.e., punishes conduct).

Perhaps *Parrish* and *Chesteen* are correct to expand *Reorganized CF&I Fabricators*' definition of "penalty" so as to include the shared responsibility payment. For the reasons that follow, however, that issue can be resolved another day.

B

To prevail, the IRS must also establish not only that the shared responsibility payment is a tax for purposes of §507(a)(8) but also that the payment is an "excise tax" under §507(a)(8)(E). The Seventh Circuit has twice addressed the meaning of "excise tax" under §507(a)(8)(E). *Illinois Department of Revenue v. Hayslett/Judy Oil, Inc.*, 426 F.3d 899 (7th Cir. 2005), defines "excise tax" as "[a] tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)." *Id.* at 902 n.1 (quoting *Black's Law Dictionary* 605 (8th ed. 2004)). *Rosenow v. Illinois Department of Revenue*, 715 F.2d 277 (7th Cir. 1983), defines "excise" as "[a] tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege". *Id.* at 279 n.4 (alteration in original) (citation omitted). Other sources offer similar definitions. See, e.g., *Webster's New Collegiate Dictionary* 395 (1979) (defining "excise" as "an internal tax levied on the manufacture, sale, or consumption of a commodity within a country" or "any of various taxes on privileges often assessed in the form of a license or other fee"); see also, e.g., *Steward Machine Co. v. Davis*, 301 U.S. 548, 582 (1937) ("Congress is [not] without power to lay an excise on the enjoyment of a privilege created by state law."); 1 William Blackstone, *Commentaries* *318 (describing an "excise duty" as "an inland imposition, paid sometimes upon the consumption of [a] commodity, or frequently upon the retail sale, which is the last stage before the consumption").

The shared responsibility payment is not a tax on the manufacture, sale, or use of goods or on an occupation or activity. It is a payment owed by "individuals precisely *because* they are doing nothing". See *Nat'l Fed'n*, 567 U.S. at 552 (opinion of Roberts, C.J.); see also *id.* at 649 (Scalia, Kennedy, Thomas & Alito, JJ., dissenting) ("If [§5000A]

'regulates' anything, it is the *failure* to maintain minimum essential coverage."). The payment is due based on a condition, namely, lacking health insurance, rather than an activity. *Id.* at 563 (opinion of Roberts, C.J.) (Section 5000A "establish[es] a condition—not owning health insurance—that triggers a tax—the required payment to the IRS."); see also *id.* at 647 (Scalia, Kennedy, Thomas & Alito, JJ., dissenting) (Section 5000A exacts a payment for the "failure to engage in economic activity".).

Accordingly, if the shared responsibility payment can be cast as an excise, it must be a tax on "the enjoyment of a privilege", as *Rosenow*'s definition allows. 715 F.2d at 279 n.4. Lacking health insurance may seem an odd privilege. But "privilege is a slippery legal word most commonly denoting a person's legal freedom to do *or not to do* a given act." *Garner's Dictionary of Legal Usage, supra*, at 709 (emphasis added). In a sense, then, §5000A imposes a tax on the enjoyment of a "privilege" of not maintaining the government-mandated minimum level of health benefits coverage. So characterized, the shared responsibility payment is a tax assessed on certain individuals who elect to follow the not-socially-preferred-but-permitted path of *not* purchasing health insurance.

This construction, though, depends on a broad conception of "privilege." Sources that use the term "privilege" to define "excise" use it in a narrower sense to mean the freedom to do something, rather the freedom to do nothing. See, e.g., *Steward Machine Co.*, 301 U.S. at 582 (citing "the enjoyment of a corporate franchise" as an example of "the enjoyment of a privilege created by state law" on which Congress has the "power to lay an excise"); *Groetken v. Ill. Dep't of Revenue (In re Groetken)*, 843 F.2d 1007, 1013 (7th Cir. 1988) (indicating that "a tax upon the privilege of retailing . . . is unquestionably an excise tax"); *Webster's New Collegiate Dictionary, supra*, at 395 & 656 (defining "excise" in part as "any of various taxes on privileges often assessed in the form of a license or other fee" and "license" as "permission to act" or "a permission granted by competent authority to engage in a business or occupation or in an activity otherwise unlawful"); *Black's Law Dictionary, supra*, at 1498 (defining "privilege tax" as "[a] tax on the privilege

of carrying on a business or occupation for which a license or franchise is required"). This more limited sense of "privilege"—the privilege to engage in activity—is a better fit with the other common subjects of excises, e.g., manufacture, sale, or use of goods; performance of an act; engagement in an occupation.

The IRS contends that *Williams v. Motley*, 925 F.2d 741 (4th Cir. 1991), supports its position that a tax imposed for failure to obtain insurance can be properly construed as an excise. *Williams*, however, deals with a tax imposed under materially different circumstances. *Williams* holds that a debt owed to the Virginia Department of Motor Vehicles for an "uninsured motor vehicle assessment" is an "excise tax" for purposes of §507(a). *Id.* at 742 & 745. Describing the assessment, *Williams* states, "Virginia does not mandate liability insurance coverage, but does require that an individual pay an uninsured motor vehicle assessment *in order to operate an uninsured vehicle.*" *Id.* at 742–43 (emphasis added). In other words, as *Williams* explains, these are "assessments exacted in connection with *engaging in an activity*". *Id.* at 744 (emphasis added). The taxes at issue in *Williams* are thus not analogous to the shared responsibility payment imposed for *not* purchasing health insurance.

Case like *Williams*, which address payments imposed for electing an alternative course of engaging in an allowed activity, should be understood to set the outer marker for exactions that give rise to a priority claim for an excise. "Because priorities grant special rights to the holders of priority claims, priorities under the Code are to be narrowly construed." 4 *Collier on Bankruptcy* ¶507.01 (Richard Levin & Henry J. Sommer eds., 16th ed. 2018); see also *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 & 667 (2006). As the previous discussion explains, only by embracing an expansive construction of "excise tax" can one conclude that the shared responsibility payment is such a tax. Narrowly construed, §507(a)(8)(E), which grants priority status to claims for excises, does not encompass the IRS's claim for a debtor's unremitted shared responsibility payment.

## C

Finally, even if "excise tax", for purposes of §507(a)(8)(E), were broad enough to encompass the shared responsibility payment, that subparagraph only grants priority status to "claims . . . for . . . an excise tax *on . . . a transaction*". 11 U.S.C. §507(a)(8)(E)(i) (emphasis added). The IRS argues that "an individual's act or choice not to obtain health insurance coverage" is a transaction for purposes of §507(a)(8)(E). See CM-ECF Doc. No. 36, at 11; see also CM-ECF Doc. No. 41, at 5. Even if the IRS could prove that these debtors purposefully *chose* not to obtain health insurance coverage—which it has not done—it offers no definition of "transaction" that reasonably encompasses an individual's unilateral and solitary decision *not* to act.

"Transaction", like "tax" and "excise", is not defined in the Bankruptcy Code, so the court must look to other sources to determine the term's ordinary meaning. See *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 69 (2011). *Black's Law Dictionary* defines "transaction" in relevant part as (1) "[t]he act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract"; (2) "[s]omething performed or carried out; a business agreement or exchange" or (3) "[a]ny activity involving two or more persons." *Black's Law Dictionary*, *supra*, at 1535. This definition makes sense in light of the discussion above about what constitutes an excise, which commonly includes a tax on the sale of goods. Other sources define "transaction" more broadly, for example, as a form of "transact", meaning "to carry on business" or "to carry out". *Webster's New Collegiate Dictionary*, *supra*, at 1230. But even so construed, "transaction" suggests *action*—such as the manufacture or consumption of a commodity, which, when viewed in strict isolation at least, may be a solitary act—not *in*action, deliberate or otherwise.

Narrowly construed, as it must be, §507(a)(8)(E), which grants priority to claims for an excise on a transaction, cannot reasonably be read to bring within its scope the IRS's claim for an unremitted shared responsibility payment imposed under §5000A.

III

The court will enter a separate order sustaining the debtors' objection to claim number 1 of the IRS and determining that the portion of the IRS's claim attributable to an outstanding shared responsibility payment imposed under §5000A, in the amount of $1,043, plus $9.18 interest, is disallowed as a priority unsecured claim and allowed as a nonpriority unsecured claim.

Dated September 28, 2018.

_____
G. Michael Halfenger
United States Bankruptcy Judge